## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jacques L. Gibble and Virginia M. Gibble | : | NO. _____ |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| Secretary of U.S. Department of Housing and Urban Development | : | |
| Defendant. | : | |

## COMPLAINT

### THE PARTIES

1.      Plaintiffs Jacques L. Gibble and Virginia M. Gibble, husband and wife (collectively referred to as "the Gibbles"), are adult individuals who reside at 30 School House Road, Lancaster, Pennsylvania 17063.

2.      Defendant Secretary of U.S. Department of Housing and Urban Development ("HUD") is the current owner of 26 School House Road, Lancaster, Pennsylvania 17063. HUD is a federal government agency with a headquarters located at 451 7th Street, S.W., Washington, DC 20410.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper pursuant to the Quiet Title Act, 28 U.S.C. § 2409a.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the dispute arose in this judicial district and the property that is the subject of the action is situated within this district.

1

## OPERATIVE FACTS

### *History of Ownership of 30 School House Road and 26 School House Road*

5.      On or about May 20, 1977, the Gibbles purchased 30 School House Road, Lancaster, Pennsylvania 17063. A true and correct copy of the deed is attached to and made part of this Complaint as Exhibit A. To date, the Gibbles remain the owners and residents of 30 School House Road.

6.      Beginning on or about June 24, 1957, Jacob E. Engle and Jeanette D. Engle, husband and wife (collectively referred to as "the Engles"), owned 26 School House Road, Lancaster, Pennsylvania 17063.  A true and correct copy of the Engles' deed is attached to and made part of this Complaint as Exhibit B.

7.      On or about December 29, 1983, the Engles sold 26 School House Road to John H. Myers and Teresa A. Myers, husband and wife (collectively referred to as "the Myers").  A true and correct copy of the Myers' deed is attached to and made part of this Complaint as Exhibit C.

8.      On or about February 18, 2005, the Myers created a home equity conversion second mortgage ("HECM") on 26 School House Road with HUD. A copy of the mortgage is attached to and made part of this Complaint as Exhibit D.

9.      The Myers owned 26 School House Road from December 29, 1983, until they defaulted on their mortgage. Upon information and belief, the Myers defaulted in 2021.

10.      Upon further information and belief, once the Myers' defaulted on their HECM loan, HUD began the foreclosure process to become the owners of 26 School House Road.

2

1193500/1075-002

### *The Properties*

11.     26 School House Road is the subject of this action to quiet title. It is bounded

and described as follows:

> Beginning at an iron pin in the middle of a public road leading from the
> Lancaster and Millersville Turnpike Road to Stoneroad's Mill; thence
> along the middle of said iron road, South fifty-three (53) degrees and
> eight (8) minutes East, one hundred and five and ninety-two hundredths
> (105.92) feet to an iron pin, a corner of land now or late of Phillip
> Bausman; thence along said land South fifty-six (56) degrees and seven
> (7) minutes West, five hundred six and thirty-seven hundredths (506.37)
> feet, to a stake, a corner of property now or formerly of Frank B.
> Bausman; thence along land, North thirty-three (33) degrees and fifty-
> three (53) minutes West, one hundred (100) feet to a stake, and North
> fifty-six (56) degrees and seven (7) minutes West, one hundred (100) feet
> to a stake, and North fifty-six (56) degrees and seven (7) minutes East,
> four hundred and seventy-one and forty-five hundreds (471.45) feet to
> the place of Beginning. Containing one and one hundred and twenty-two
> thousandths acres (1.222) [sic] more or less.

See Exhibit C.

12.     The Gibbles' property, 30 School House Road, is bounded and described as

follows:

> Beginning at a point in the bed of Township Road No. 516 School House
> Road, a corner of the property now or late of Dr. Charles B. Winter, said
> point being located by a distance of three hundred fifty-four (354) feet,
> more or less, South of the intersection of said School House Road with
> Abbeyville Road; thence continuing in and along said School House
> Road, South 52 degrees 19 minutes 00 seconds East, a distance of 130.60
> feet to a spike, a corner of the property now or late of Jacob Engle; thence
> continuing along the same, South 56 degrees 38 minutes 18 seconds
> West, a distance of 391.78 to an iron pin, a corner of the aforesaid
> property now or late of Dr. Charles R. Winter; thence continuing along
> the same, the following two courses: (1) North 33 degrees 04 minutes 00
> seconds West, a distance of 90.00 feet to an iron pin and (2) passing over
> an iron pin set at a distance of 333.53 feet, therefrom North 51 degrees
> 09 minutes 00 seconds East, a distance of 350.50 feet to a point in the
> bed of School House Road, the point or place of Beginning.

See Exhibit A.

3

13.      30 School House Road is immediately adjacent to 26 School House Road.  To serve as a visual depiction of the properties, a copy of a Lancaster County Tax Parcel Map is attached to and made part of this Complaint as Exhibit E.

14.      In 2022, the Gibbles commissioned a land survey of both 30 School House Road and 26 School House Road. A copy of the survey is attached to and made part of this Complaint as Exhibit F.

### The Gibbles' Possession of 26 School House Road

15.      In April of 1980, Charles Winter, an owner of an adjacent property (80 School House Road, Lancaster, Pennsylvania 17063) gave the Gibbles permission to use two of his fields. This verbal agreement remains in effect today.

16.      Specifically, Winter gave the Gibbles permission to use a field on the western side of 26 School House Road and a field on the southern side/rear of 26 School House Road.

17.      Since the Gibbles' property did not abut Winter's field on the southern side/rear of 26 School House Road, the Gibbles traversed a portion of 26 School House Road ("the Property") to access and use Winter's fields for grazing.

18.      The Gibbles did not obtain permission from the Engles to access or use the Property.

19.      In May of 1981, the Gibbles constructed a gate at the lower end of the Engles' bakery-annex building along the western side of the property line between their and the Engles' properties.

20.      In the Spring of 1982, the Gibbles fenced in a portion of the Engles' property with an electric fence.

4

21.     The electric fence was marked with metal spokes and white flags. Photographs of the electric fence taken by the Gibbles are attached to and made a part of this Complaint as Exhibit G.

22.     Once the area was fenced in, the Gibbles started to have their horses graze the Property as well, rather than just using it for ingress and egress to Winter's fields. See Exhibit G.

23.     The Gibbles continued to use the Property even after the Myers purchased the Property from the Engles in December of 1983.

24.     The Gibbles have used the Property since 1983 without permission from the Myers.

### The Gibbles Maintained and Continuously Used the Parcel

25.     Since 1982, the Gibbles have used and maintained a portion of the Property for horse grazing.

26.     The Parcel claimed by the Gibbles runs along the Property's southern, western, and eastern boundary lines. The northern boundary of the claimed parcel cuts horizontally across the Property, north of the Masonry Building, a walnut tree, and a maple tree. For a visual depiction, see an outlined version of the land survey that is attached to and made a part of this Complaint as Exhibit H.

27.     Over the last forty years, the Gibbles have maintained the property by: mowing, spraying, and reseeding the property; replacing fence posts and rails; and removing dead or diseased trees.

28.     Defendant and its predecessors in interest have never paid or otherwise compensated the Gibbles for maintaining the property.

5

29.     In 1989, the Gibbles spent approximately $1,272 to replace the then-existing electric fence around the Myers' field with a three-rail wooden fence. A copy of the invoice is attached to and made part of this Complaint as Exhibit I.

30.     The fence divided the Myers and Winter properties, but it did not do so on the property line because of a natural stream. As a result, the fence is inside the Myers' property line by about forty (40) feet.

31.     In 1996, a tree on the Gibbles' property fell on the bakery-annex structure. The Gibbles gave the Myers money to have the tree removed.

32.     Following the incident, the Gibbles paid to remove two diseased trees on the disputed property to eliminate risk of any other damages from fallen trees.

33.     In the fall of 2008, the Gibbles attached electric fencing on the rails around the entirety of the Parcel and connected it to the existing electric fence line that ran onto Winter's property.

34.     Around the same time, the Gibbles enclosed an area they had used for nearly two decades by installing a four-rail wooden fence.

35.     In the Spring of 2018, the Gibbles created a field within a field by enclosing a portion of the Myers' field with electric fencing to create a track paddock. One of the purposes of this enclosure was to prevent erosion.

36.     Currently, the fencing around the property is two-level: three and four split rails with an electric wire system attached to the inside of the split rail.

37.     On or about August 13, 2018, the Gibbles hired a civil engineer, Jack L. McSherry, to complete an evaluation of the Myers' buildings.

6

1193500/1075-002

38.     In 2020, the back wall of the bakery annex building began to collapse, falling towards the Gibbles' property. The Gibbles addressed the safety concern by tying the wall together using a pair of rope lines.

39.     On or about December 8, 2020, the Gibbles hired McSheery to evaluate the Myers' buildings again and create a written report. The written report is attached to and made part of this Complaint as Exhibit J.

40.     For over forty years, the Gibbles have acted as the owners of the Parcel.

### *History of the Dispute*

41.     On August 12, 2021, Cassee Buchanan, a contract manager with BLM Companies, sent a letter to the Gibbles on behalf of HUD and ordered the Gibbles to remove their horses from the parcel of 26 School House Road. The letter is attached to and made part of this Complaint as Exhibit K.

42.     On August 26, 2021, the Gibbles through counsel replied to Buchanan, HUD's agent, to assert their rights to the Parcel. A copy of the letter is attached to and made part of the Complaint as Exhibit L.

43.     Through adverse possession, the Gibbles obtained title to the Parcel.

44.     To avoid any further demands from Defendant and/or any infringement on their property rights, the Gibbles bring this action to quiet title against Defendant.

### COUNT I
### QUIET TITLE THROUGH ADVERSE POSSESSION

45.     Paragraphs 1 through 44 are incorporated into Count I.

46.     Section 2409a allows parties to bring adverse possession claims against the United States *so long as* they acquired title during the prior owner's

1193500/1075-002

possession. *Tadlock v. U.S.*, 774 F. Supp. 1035, 1038 (S.D. Miss.1990); *see also*
*Gorman v. City of Woodinville*, 283 P.3d 1082 (Wash. 2012) (holding that action to
quiet title against city should proceed because prior owner cannot transfer to the
government title he does not possess); *Watts v. United States*, 2002 U.S. Dist.
LEXIS 10169 at *11 (Neb. D. 2002) (denying government's motion for summary
judgment for lack of subject matter jurisdiction).

47.     Because adverse possession is a state law claim, a federal court will
apply the law of the state where the property is located. *See Tadlock*, 774 F. Supp.
at 1038 n.3 ("The law applicable in a case involving the issue of adverse possession
is the law of the state wherein the claimed property lies."); *see e.g., Watkins v.*
*Phila. Land Bank*, 2021 U.S. Dist. LEXIS 59189 at *6 (E.D. Pa. May 29,
2021)(applying Pennsylvania law for adverse possession claim).

48.     To obtain title by adverse possession according to Pennsylvania law, a
claimant must prove actual, continuous, exclusive, distinct, visible, notorious, and hostile
possession of the land for twenty-one years. *Baylor v. Soska*, 658 A.2d 743, 744 (Pa. 1995); 42
Pa. Cons. Stat. Ann. § 5530(a)(1).

49.     The Gibbles entered and continuously used the Parcel for the last forty
years without the consent of any owner of the Property.

50.     Since taking possession of the Parcel, the Gibbles have had exclusive
possession and excluded all others. *See Fred E. Young, Inc. v. Brush Mtn.*
*Sportsmen's Ass'n*, 697 A.2d 984, 990 (Pa. Super. 1997)(holding that cutting the

grass and planting shrubbery was sufficient to demonstrate exclusive and distinct possession).

51.     Such possession has been hostile and adverse to the Defendant's interest in the Property. *See Gee v. CBS, Inc.*, 471 F. Supp. 600, 655 (E.D. Pa. 1979), *affirmed*, 612 F.2d 572 (3d Cir. 1979)("As to 'hostility,' this means simply that the true owner has not consented to the possession.").

52.     The Gibbles' use and maintenance constitutes actual possession. *See e.g.*, *Brennan v. Manchester*, 708 A.2d 815, 821 (Pa. Super. 1998)(holding that claimant had actual possession where he maintained land by seeding, fertilizing and mowing the lawn; parking vehicles on the land; and installing berm to control water run-off).

53.     The Gibbles have treated the Parcel as their own, making their use thereof open, notorious, and known to the public. *See Johnson v. Tele-Media Co. of McKean Cnty.*, 90 A.3d 736, 745 (Pa. Super. 2014) (holding that claimant's actions are open and notorious where they are performed openly and are visible for a passerby to view).

54.     Because the Gibbles enclosed the property, the possession was distinct and the Engles and the Myers were put on notice that the Gibbles were claiming the parcel as their own. *Brennan*, 708 A.2d at 818 (stating that for possession to be open and notorious "the claim of ownership must be evidenced by conduct sufficient to place a reasonable person on notice that his land is being held by the claimant as his own.")

9

55.   The Gibbles have satisfied all of the requirements under Pennsylvania law for obtaining adverse possession title to the Parcel.

56.   Pursuant to Pennsylvania law, the Gibbles' claim to the Parcel vested in 2003, when the Myers owned the Property.

57.   Since the Gibbles' interest vested prior to HUD's interest, the Gibbles are entitled to bring this action to quiet title against Defendant and obtain declaratory and injunctive relief. *Tadlock*, 774 F. Supp. at 1038.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jacques L. Gibble and Virginia M. Gibble respectfully request judgment in its favor and the following relief:

a.   A declaratory judgment stating that Plaintiffs have obtained full and complete title to the Parcel of the Property through adverse possession;

b.   An Order granting a permanent injunction, directing Defendant, and any subsequent owners of 26 School House Road, to refrain from any interference with Plaintiffs' lawful use of their Property; and

c.   Any other such other relief for Plaintiffs which the Court deems just and proper.

BRUBAKER CONNAUGHTON GOSS & LUCARELLI LLC

Dated:  December 14, 2022          By: _____
                                             Mark E. Lovett, Esquire
                                             Alicia E. Muir, Esquire
                                             Attorney I.D. Nos. 41071/332021
                                             480 New Holland Avenue, Suite 6205
                                             Lancaster, PA 17602
                                             Telephone: 717/945-5745
                                             Fax: 717/945-5764
                                             *Attorneys for Plaintiffs*

10

1193500/1075-002

**<u>VERIFICATION</u>**

I, Virginia M. Gibble, hereby verify that the information set forth in the foregoing *Complaint* is true and correct to the best of my knowledge, information and belief. I understand that any false statements contained herein are subject to the penalties of 28 U.S.C. §1746, relating to unsworn falsification to authorities for any false statements.

Date: 12/15/2022

Virginia M. Gibble

## **VERIFICATION**

I, Jacques L. Gibble, hereby verify that the information set forth in the foregoing *Complaint* is true and correct to the best of my knowledge, information and belief.  I understand that any false statements contained herein are subject to the penalties of 28 U.S.C. §1746, relating to unsworn falsification to authorities for any false statements.

Date: 12/15/22

Jacques L. Gibble

1200668/1075-002